ROGER PECK, JR. *v.* PAUL JACQUEMIN ET AL.
(12154)

HEALEY, PARSKEY, SHEA, DANNEHY and QUINN, Js.

Argued December 12, 1984—decision released April 23, 1985

*Wesley W. Horton,* with whom was *Zbigniew S. Rozbicki,* for the appellant (plaintiff).

*Jeffrey L. Williams,* for the appellee (defendant Ira J. Roy).

ARTHUR H. HEALEY, J. This case arises out of a two-car accident in Torrington on September 27, 1979, in which the plaintiff, Roger Peck, Jr., a passenger, was injured. In the ensuing negligence action instituted in 1981, Peck sued both drivers, Paul Jacquemin and Ira J. Roy. On December 27, 1982, he settled the case with Jacquemin, the driver in whose car he was a passenger, for $100,000. The remaining defendant Roy (hereinafter the defendant) alleged, by way of special defense, that he was entitled to a setoff in that amount if damages were assessed against him.[1] In his reply to this special defense, the plaintiff admitted the payment from Jacquemin but denied that portion of the special defense that alleged that the defendant was "entitled to a set-off in the amount of said payment because by operation of law there is no contribution allowed among joint tortfeasors."[2] This special defense and the reply were filed during the trial after the defendant pressed his claim of a setoff. At trial, the defendant had filed a memorandum of law[3] in which he claimed that Public Acts 1982, No. 82-406, § 3, codified as General Statutes § 52-216a,[4] enacted in response to our decision in

---

[1] This pleading set out the following:
"BY WAY OF SPECIAL DEFENSE
"Plaintiff received payment from Paul Jacquemin in the amount of $100,000 and, if damages are assessed, this defendant is entitled to a setoff in the amount of said payment."

[2] In its entirety, this pleading set out the following:
"REPLY TO SPECIAL DEFENSE
"Plaintiff admits that portion of the Defendant's special defense that he received payment from the co-defendant Jacquemin. But denies the allegation that he is entitled to a set-off in the amount of said payment because by operation of law there is no contribution allowed among tortfeasors."

[3] We will discuss this memorandum in more detail later in this opinion.

[4] General Statutes (Rev. to 1983) § 52-216a, entitled "Reading of agreements or releases to jury prohibited. Adjustments for excessive and inadequate verdicts permitted," provides: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release

*Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982), was unconstitutional. In his memorandum he maintained that this 1982 statute did not cure "the defect found in *Seals* . . ." and that it "unconstitutionally interferes with and invades the fact-finding function of the jury, Connecticut General Statutes [sic] Constitution Article I, §19 [sic], and is void in its entirety."

In pressing his claim at that time, the defendant's trial counsel (who is also appellate counsel) argued to the court that he was entitled, in the presence of the jury, to question the plaintiff, who was then testifying, as to whether he had settled with Jacquemin by executing a release to him in return for the payment of $100,000.[5] Defense counsel argued orally that § 52-216a as amended both changed the common law and thus was inapplicable and "unconstitutionally interfere[d] with the defendant's right to trial by jury." The plaintiff's counsel argued that § 52-216a was applicable because it provided that the jury should not be informed of any releases with other parties, joint tortfeasors, or any agreements not to sue and also because it was procedural and not substantive. He argued further that the proposed special defense of setoff was not a proper defense "because it's not a setoff . . . it's a question of mitigation" and that "[t]here is a distinction between a setoff and mitigation of damages."

---

of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

[5] During this argument defense counsel informed the court that it was not "my intention to introduce the release." The plaintiff had already received the $100,000 settlement from Jacquemin.

The trial court ruled that the defendant could file the special defense of setoff and that he could examine the plaintiff in the presence of the jury on the release given by him to Jacquemin. In doing so, he said: "I'm going to, under the authority of the holding of the Supreme Court in Seals and Hickey [sic], allow Mr. Williams [Roy's counsel] to make his offer of proof." Prior to doing so, the trial court indicated that it viewed § 52-216a as amended as substantive and not procedural and that it changed the common law.[6]

Thereafter, defense counsel did examine the plaintiff before the jury concerning the Jacquemin settlement.[7] During its instructions to the jury, the court charged on the defendant's special defense alleging a setoff of the payment the plaintiff received from

---

[6] During the argument in the absence of the jury the following occurred:

"The Court: Isn't it quite clear that this statute was enacted subsequent to the Supreme Court decision declaring the former statute unconstitutional? Isn't it substantive in nature and not procedural?

"Mr. Rozbicki [plaintiff's counsel]: Well, of course, my claim would be that it is procedural.

"The Court: It changes the common law, does it not?

"Mr. Williams [Defendant Roy's counsel]: It does, Your Honor. And not only do we claim it changes the common law, we raise specifically the claim that it unconstitutionally interferes with the defendant's right to a trial by jury."

[7] The examination of the plaintiff by defendant Roy's counsel included the following:

"Q. Mr. Peck, you brought a lawsuit against Paul Jacquemin; is that correct, sir?

"A. Yes, sir.

"Q. And very recently that lawsuit was resolved; is that correct, sir?

"A. Yes, sir.

"Q. And Mr. Jacquemin paid a sum of money in exchange for a release of your lawsuit; is that correct?

"A. Yes, sir.

"Q. And the sum of money that he paid you in exchange for a release was $100,000.00? Is that correct, sir?

"A. Yes, sir.

"Mr. Williams: Okay. I have no further questions.

"Mr. Rozbicki: I have a couple."

Jacquemin to which the plaintiff duly excepted.[8] The jury returned a plaintiff's verdict against the defendant in the amount of $35,000. Thereafter, the plaintiff filed motions to set aside the verdict as inadequate and for a new trial, as well as an additur, claiming that the verdict was inadequate.[9] The court, after a hearing, denied both motions. This appeal followed.

On appeal, the plaintiff raises two issues: (1) whether Public Acts 1982, No. 82-406, § 3 (General Statutes § 52-216a as amended), was applicable when the cause of action arose before the effective date of this statute but where settlement with one joint tortfeasor occurred after that effective date;[10] and (2) whether that stat-

---

[8] The court charged the jury in part as follows:

"The defendant, as I indicated, has filed a special defense that the plaintiff received payment from Paul Jacquemin in the amount of one hundred thousand dollars. The plaintiff has admitted receiving the payment and denied that he's entitled to a setoff.

\* \* \*

"So, in this case, where the plaintiff received from Mr. Jacquemin the sum of one hundred thousand dollars, that sum must be considered in mitigation of any damages which may be awarded to the plaintiff. Therefore, if you find the total amount of damages that should be awarded to the plaintiff to be more than one hundred thousand dollars, you should deduct that sum and award the balance as damages to the plaintiff.

"If, on the other hand, you find that the total amount of damages that should be awarded to the plaintiff is equal to the amount received from Mr. Jacquemin or less than that amount, then you should return a verdict for the defendant."

The plaintiff excepted as follows:

"Mr. Rozbicki: And then, of course, with regard to Your Honor's charge on contribution and setoff. Of course, I took exception to that beforehand, and I formally take exception to that presently."

[9] This motion for additur was as follows:
"MOTION FOR ADDITUR
"The plaintiff, in conjunction with his motion to set aside the verdict, filed herewith, claiming that the verdict rendered in the above-entitled case is inadequate, and pursuant to § 52-228a of the General Statutes, respectfully moves the Court to enter an additur, as supported by the evidence, of such an amount as the court deems reasonable."

[10] We point out that the first issue does not require us to determine whether Public Acts 1982, No. 82-406, § 3, is substantive or procedural and,

ute is unconstitutional under *Seals* v. *Hickey,* supra. The first issue is answered in the affirmative and the second in the negative. The trial court, therefore, committed error in permitting the prior settlement with Jacquemin to be brought to the attention of the jury.

It is readily apparent from a common sense reading of § 52-216a that its legislative objective was to pro-

therefore, we do not need to reach the question of retroactivity. Certain observations, however, may properly be made here. In *Sturges* v. *Carter,* 114 U.S. 511, 519, 5 S. Ct. 1014, 29 L. Ed. 240 (1885), the United States Supreme Court approved Justice Story's definition of statutory retroactivity seventy years earlier in *Society for the Propagation of the Gospel* v. *Wheeler,* 22 Fed. Cas. 756, 767 (1814) (Case #13,156), where he said: " 'Upon principle, every statute which takes away or impairs vested rights acquired under existing laws . . . or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective.' " In acknowledging the presumption against retroactivity and decrying it where injustice will result if it is used, we have recognized that any such application is not to interfere with vested or substantive rights. See, e.g., *Heffernan* v. *Slapin,* 182 Conn. 40, 51, 438 A.2d 1 (1980); *Nagle* v. *Wood,* 178 Conn. 180, 187–88, 423 A.2d 875 (1979); *Gibson* v. *Fullin,* 172 Conn. 407, 412–13, 374 A.2d 1061 (1977); *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 195–96, 286 A.2d 308 (1971). In this connection, we should recognize that here, "as elsewhere in the law, the labels 'substantive' and 'procedural' do not always provide clear-cut answers. A statute which might ordinarily be classified as 'procedural' may so change the legal effect of past events that its application to pending matters may be retroactive." *Coast Bank* v. *Holmes,* 19 Cal. App. 3d 581, 594, 97 Cal. Rptr. 30 (1971).

In any event, it is settled that *"[a] law is not retroactive merely because part of the factual situation to which it is applied occurred prior to its enactment; rather, a law is retroactive only when it operates upon transactions which have been completed or upon rights which have been acquired or upon obligations which have existed prior to its passage.* 2 Sutherland, Statutory Construction § 2202, p. 117 (3d ed. 1943); 82 C.J.S. Statutes § 412, p. 980." (Emphasis added.) *Frisbie* v. *Sunshine Mining Co.,* 93 Idaho 169, 172, 457 P.2d 408 (1969); *Cox* v. *Hart,* 260 U.S. 427, 435, 43 S. Ct. 154, 67 L. Ed. 332 (1922); *John McShain, Inc.* v. *District of Columbia,* 205 F.2d 882, 883 (D.C. Cir.), cert. denied, 346 U.S. 900, 74 S. Ct. 227, 98 L. Ed. 400 (1953); *United States Steel Credit Union* v. *Knight,* 32 Ill. 2d 138, 142, 204 N.E.2d 4 (1965); *Wood* v. *J.P. Stevens & Co.,* 297 N.C. 636, 650, 256 S.E.2d 692 (1979). One court has said that "[a] statute is not retroactive merely because it draws on antecedent facts for a criterion in its operation." *United Engineering & Foundry Co.* v. *Bowers,* 171 Ohio St. 279, 282, 169 N.E.2d 697 (1960); see *Cox* v. *Hart,* supra.

hibit in a trial to a jury its knowledge of any agreement or release involving a tortfeasor "at any time during the trial of the cause of action . . ." against another tortfeasor. Under the express language of § 52-216a, the "introduction of [any] such agreement or release in a trial to the court" is not prohibited. Further, the statute clearly provides that the court, "at the conclusion of the trial" and after a verdict is returned, is empowered to act in the event that it "concludes" that the verdict either "is excessive as a matter of law" or rather "is inadequate as a matter of law." Under § 52-216a as amended, the jury-interdicted "agreement . . . not to bring legal action or . . . release of a tortfeasor in any cause of action" involves what fairly and euphemistically are called "settlements." The statute thus instructs the trial court how to proceed with such settlements in both jury and court cases. Even before our decisions in *Seals* v. *Hickey,* supra, and *Fritz* v. *Madow,* 179 Conn. 269, 426 A.2d 268 (1979), in speaking of the precursor of § 52-216a, i.e., Public Acts 1976, No. 76-197, we pointed out that that statute which provided that such an agreement was not to be read to the jury or introduced into evidence "expresse[d] the better policy, removing whatever possibility for prejudice may exist . . . . " *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978).

The present statute, which was enacted in response to our decision in *Seals,* became effective on October 1, 1982. General Statutes § 2-32. The accident which gave rise to the plaintiff's cause of action in this case occurred on September 27, 1979. The plaintiff, Peck, instituted the present action against the defendants Jacquemin and Roy on June 26, 1981, and it was returnable to court on July 21, 1981. The plaintiff executed a release in favor of the defendant Jacquemin on December 27, 1982, in return for the payment of $100,000. On January 18, 1983, the plaintiff filed a

withdrawal of this action as against Jacquemin.[11] The trial of the action to jury began on March 2, 1983, and, on March 10, 1983, the jury returned a plaintiff's verdict in the amount of $35,000 against the defendant Roy.

We agree with the plaintiff's argument that he did not seek to have the statute applied retroactively.[12] Section 52-216a as amended proscribes the bringing to the jury's attention any agreement or release referred to in the statute and prescribes the course to be undertaken by the court after verdict in a jury trial. This trial took place *after* the effective date of the statute. The statute affects only circumstances that may exist at the time of trial rather than those of the date of the accident. The defendant argues to the contrary; he maintains not only that the statute is substantive and cannot be applied retroactively because of our decisional law, but also that the application of § 52-216a as amended in this case would run afoul of General Statutes § 55-3, which provides: "No provision of the general statutes,

[11] The withdrawal of action was dated December 27, 1982, and stamped as filed in the clerk's office on January 5, 1983.

[12] The defendant in this court makes certain claims in his brief, as well as before us, which we will not consider because he did not make them in the trial court. It is true that the plaintiff claims in his brief that General Statutes § 52-216a is procedural and not substantive and that, therefore, it may be applied "retroactively." It is also true that he also argues in his brief, as he did before us, that this statute (and its predecessor) was one "regulating settlements [and that it] applies to settlements entered into *after* the effective date of the statute." This approach commends itself not only as one of basic fairness but also as a route to eschew nettlesome constitutional and statutory questions touching on applicability in the first instance. We chose this approach.

It is interesting to note that in both *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982), and *Fritz* v. *Madow,* 179 Conn. 269, 426 A.2d 268 (1979), decisions that involved the precursor of § 52-216a as amended, no question of retroactivity was raised by the parties in those cases, although the circumstances in both indicate the statutory application pattern claimed by the plaintiff in this case. In both *Seals* and *Fritz,* the statute was applied to accidents occurring before, but settlements occurring after, the effective date of the statute.

not previously contained in the statutes of the state, which imposes any new obligation on any person or corporation, shall be construed to have a retrospective effect." What we have already said disposes of both grounds of his claim. First, even if we assumed that the statute was substantive, simply put, it is just not being applied retroactively. Second, while "[a] right of action, including one for personal injuries, is a vested property interest, before as well as after judgment"; *Massa* v. *Nastri,* 125 Conn. 144, 147, 3 A.2d 839 (1939); the plaintiff in such a matter has no right to the payment of damages from the defendant(s) until entitlement to damages has been so adjudged *after* a trial to a jury or a court. It follows, therefore, that a defendant has no "obligation" in accordance with § 55-3 to pay damages *until that time.* No vested or substantive right of the defendant is implicated, let alone violated, by the application of § 52-216a as amended in this case. Nor is he visited by any hardship, difficulty or injustice imposed by its application. We accordingly reject the defendant's claim that the statute prejudicially affects the legal character of past transactions in derogation of the rule against retrospective application of statutes and that the rights and liabilities of the parties to a negligence action are determined at the time the cause of action arises, in the present case on the date the automobile accident occurred. The statute, i.e., § 52-216a as amended, is thus applicable.

We now address the issue whether § 52-216a as amended is unconstitutional under *Seals* v. *Hickey,* supra. The parties agree that this statute was enacted in response to our decision in *Seals.* The plaintiff maintains that the statute passes constitutional muster under *Seals.* On the other hand, the defendant disagrees and argues, inter alia, that the statute does not cure the constitutional infirmity we pointed out in *Seals.*[13]

---

[13] The defendant filed a Practice Book § 3012 (a) statement; that rule affords to an appellee the opportunity to present for review alternate

We agree with the plaintiff that § 52-216a as amended is constitutional under *Seals*. The trial court's ruling permitting the defendant to bring to the jury's attention the prior settlement with Jacquemin and its subsequent instructions to the jury as to its use of that settlement were based squarely on its view of *Seals*. The trial court thus permitted the jury to consider the prior settlement as was done at common law; see, e.g., *Kosko* v. *Kohler*, supra, 387; before the precursor of § 52-216a was originally enacted in 1976. See Public Acts 1976, No. 76-197. The trial court clearly adopted the defendant's argument at trial that § 52-216a as amended left untouched a trial court's "unbridled discretion" in dealing with a verdict, thus invading the province of the jury. This was the precise defect, argues the defendant, that we said in *Seals* "unconstitutionally interfer[ed]" with the right of trial by jury under the Connecticut constitution, article first, § 19. In his appellate brief, the defendant argues that by passing Public Acts 1982, No. 82-406, § 3, the legislature has merely reenacted those portions of § 52-216a we found in *Seals* provided "absolutely no direction to the court concerning what steps it may take after the verdict has

grounds upon which the judgment below may be affirmed. In it he raises some questions, including those of constitutional dimension, which he did not raise at the trial. These include a claim that the statute is unconstitutionally vague and standardless under both the Connecticut and United States constitutions. He briefs, but does not include in his § 3012 (a) statement, claims that the statute is unconstitutional because it denies equal protection and denies due process of law both under the Connecticut and United States constitutions. The plaintiff claims these *and* other claims were not made by the defendant at the trial.

We will not consider these claims of the defendant. In so concluding it is significant to point out that compliance with § 3012 (a) is not to be considered in a vacuum; particularly to be considered is its linkage with § 3063 which provides in part that this court "shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to trial." This linkage evinces a fair treatment of the parties and the trial court. While we are not required to do so under our rules, we have decided to address certain other claims made by the defendant in his § 3012 (a) statement although he did not make them in the trial court.

been returned." *Seals* v. *Hickey,* supra, 355. He then asserts that while the trial court is "permitted to adjust a verdict," it "is left with no indication as to whether the verdict amount alone should be the arbiter of whether damages are excessive or inadequate, or whether the verdict amount should be considered in light of settlement monies received by the plaintiff." Additionally, the defendant maintains that the legislature could have made § 52-216a constitutional by requiring the trial court to set off from the verdict amounts received by the plaintiff in settlement and that the statute was not intended to abrogate the common law rule that amounts received by the plaintiff from any tortfeasor must be credited to the obligation of all other joint tortfeasors. As the defendant asserts in his brief, however, by enacting this statute which subjects "the damages to be paid by the defendant to an uncontrolled discretion without standards, the Legislature has impermissibly interfered with [his] right to trial by jury" under article first, § 19, of the Connecticut Constitution.[14] We do not accept the defendant's claims that § 52-216a as amended is unconstitutional.

At this point, certain relevant tenets of statutory construction may be set out. " 'It is an elementary rule of construction that statutes should be considered as a whole, with a view toward reconciling their separate parts in order to render a reasonable overall interpretation; the application, moreover, of common sense to the statutory language is not to be excluded. *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 411, 311 A.2d 65 (1972); *Garbaty* v. *Norwalk Jewish Center, Inc.,* 148 Conn. 376, 382, 171 A.2d 197 (1961). We must avoid a consequence which fails to attain a rational

[14] In the present case, the claimed unconstitutional interference with the defendant's right to trial by jury in violation of article first, § 19, of the Connecticut constitution is the only constitutional claim articulated by him in the trial court.

and sensible result which bears most directly on the object which the legislature sought to obtain. *United Aircraft Corporation* v. *Fusari,* supra, 414; *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508 (1955); *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, 179 A. 195 (1935).' *La Providenza* v. *State Employees' Retirement Commission,* 178 Conn. 23, 29, 420 A.2d 905 (1979). ' "In construing a statute a court considers its legislative history, language, purpose and the circumstances surrounding its enactment. *Delinks* v. *McGowan,* 148 Conn. 614, 618, 173 A.2d 488 [1961]; *Cassidy* v. *Tait,* 140 Conn. 156, 160, 98 A.2d 808 [1953]." *State* v. *Sober,* 166 Conn. 81, 91n, 347 A.2d 61 [1974].' *Winchester* v. *State Board of Labor Relations,* 175 Conn. 349, 356, 402 A.2d 332 (1978)." *Dukes* v. *Durante,* 192 Conn. 207, 214–15, 471 A.2d 1368 (1984). "It is important at the outset to remember that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger. We have consistently held that every statute is presumed to be constitutional and have required invalidity to be established beyond a reasonable doubt." (Citations omitted.) *Eielson* v. *Parker,* 179 Conn. 552, 557, 427 A.2d 814 (1980); see *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 642, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed. 2d 5 (1980). It is well settled not only in this court, but also in the United States Supreme Court, "that a strong presumption of constitutionality attaches to acts of a legislature." (Citations omitted.) *State* v. *Pickering,* 180 Conn. 54, 62 n.4, 428 A.2d 322 (1980); see *Seals* v. *Hickey,* supra, 353. Justices Holmes and Frankfurter have said that "the rule is settled that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act. Even to avoid a serious doubt the rule is the same." *United States* v. *Lovett,* 328 U.S. 303, 329, 66 S. Ct. 1073, 90

L. Ed. 1252 (1946) (Frankfurter, J., concurring); *Blodgett* v. *Holden,* 275 U.S. 142, 144, 48 S. Ct. 105, 72 L. Ed. 206 (1927); see *Verrastro* v. *Sivertsen,* 188 Conn. 213, 220–21, 448 A.2d 1344 (1982). " 'Courts in passing upon the validity of a legislative act do not feel justified in declaring it void unless there is a clear and unequivocal breach of the constitution . . . . We approach the question with great caution, examine it with infinite care, make every presumption and intendment in favor of validity, and sustain the act unless its invalidity is, in our judgment, beyond a reasonable doubt.' *Kellems* v. *Brown,* [163 Conn. 478, 486, 313 A.2d 53, appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973)], quoting *Edwards* v. *Hartford,* 145 Conn. 141, 145, 139 A.2d 599 (1958). The one attacking the legislation has the burden to negative every conceivable basis which might support it. *Madden* v. *Kentucky,* 309 U.S. 83, 88, 60 S. Ct. 406, 84 L. Ed. 590 (1940); *Waterbury Motor Lease, Inc.* v. *Tax Commissioner,* [174 Conn. 51, 60–61, 381 A.2d 552 (1977)]; *Kellems* v. *Brown,* supra. 487–88." *United Illuminating Co.* v. *New Haven,* supra, 642.

It is also basic to statutory construction that "statutes are to be construed to give effect to the apparent intention of the lawmaking body." *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 6, 434 A.2d 293 (1980); see *Verrastro* v. *Sivertsen,* supra, 220; 2A Sutherland, Statutory Construction (4th Ed. 1984) § 45.05. " 'In interpreting the meaning of a statute, we attempt to determine the intent of the legislature as expressed by the common and approved usage of the words in the statute.' " *Nationwide Ins. Co.* v. *Gode,* 187 Conn. 386, 393–94, 446 A.2d 1059 (1982); General Statutes § 1-1(a). "The intention of the legislature is found not in what it meant to say, but in the meaning of what it did say." *Colli* v. *Real Estate Commission,* 169 Conn. 445, 452, 364 A.2d 167 (1975); *Muha* v.

*United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009 (1980). " '[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . .' "; *Winchester* v. *Connecticut State Board of Labor Relations,* 175 Conn. 349, 355–56, 402 A.2d 332 (1978); and no word in a statute is to be treated as superfluous. "Insofar as it is possible, the entire enactment is to be harmonized, each part made operative." *State* v. *Grant,* 176 Conn. 17, 20, 404 A.2d 873 (1978); *Sillman* v. *Sillman,* 168 Conn. 144, 148, 358 A.2d 150 (1975). In construing a statute, we will assume that the legislature intended to accomplish a reasonable and rational result. *State* v. *Campbell,* 180 Conn. 557, 564, 429 A.2d 960 (1980); *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979).

In *Seals,* the defendant claimed that § 52-216a as interpreted by us in *Fritz* v. *Madow,* supra, denied him his constitutional right to trial by jury.[15] *Seals* v. *Hickey,* supra, 349. We agreed and said that that "statute allows the court to interfere with and invade the fact-finding function of the jury by permitting [the court] to substitute its judgment for that of the jury." *Seals* v. *Hickey,* supra, 352. We also observed that that statute gave the trial court "the power to adjust the verdict without the option of a new trial." Id., 353. We

---

[15] In *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982), we construed General Statutes § 52-216a as it then existed. It was entitled "Reading of agreements or releases to jury prohibited" and it provided: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action, shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of such cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in such action be read or in any other way introduced to a jury, except the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to such action pursuant to such agreement not to sue or such release of claim. Nothing in this section shall prohibit the introduction of such agreement or release in a trial to the court."

determined that the portion of the statute that remained after the constitutional attack[16] "offer[ed] absolutely no direction to the court concerning what steps it may take after the verdict has been returned" and that, because § 52-216a was "clearly inseparable . . . the entire statute must fall" as unconstitutional. Id., 355. In *Seals* we also determined that the portion that remained after the constitutional attack could not "stand alone" because to render that part workable, "we would be called upon to implement the remaining part," which we could not do as "[w]e do not act as a revisor of the statutes," a function within the province of the legislative branch. Id. We, therefore, concluded that, because of our holding that the statute violated the defendant's right to jury trial under the Connecticut constitution, "the procedure in circumstances such as those presented by this case, *subject to future legislation,* will revert to that preexisting the enactment of § 52-216a . . . . " (Emphasis added.) Id. The cases that we cited clearly indicated the common law rule in which a prior settlement could be brought to the attention of the jury. See, e.g., *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978). Our decision in *Seals* was released on March 2, 1982, and the legislative response came shortly thereafter in Public Acts 1982, No. 82-406, § 3, now codified as § 52-216a. We now hold that this statute is constitutional under *Seals.*

In our decision in *Seals,* we said that "[t]he dominant purpose of § 52-216a was to prevent the agreements

---

[16] That portion of General Statutes § 52-216a provided: "An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action, shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of such cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in such action be read or in any other way introduced to a jury . . . ." See *Seals* v. *Hickey,* 186 Conn. 337, 355, 441 A.2d 604 (1982).

or releases referred to in the statute from being read to the jury or introduced into evidence." *Seals* v. *Hickey,* supra, 354. The defendant's brief refers to our statement in *Seals* that "the evil intended to be avoided by its passage was the jury's knowledge of the existence of any release or claim or agreement not to sue, because such knowledge might tend to be prejudicial to a party to the action." Id., 344. He argues that "[i]t is reasonable to infer that the Legislature had this purpose in mind in enacting the present statute." He also maintains that the legislative history shows a "further purpose," which was to correct what was perceived "as an *unwarranted discretion* vested in the court with respect to additur or remittitur." (Emphasis added.) In any event, although the parties differ on what the legislature accomplished in enacting the statute, they appear to agree on the purpose sought to be accomplished.[17]

The statute itself is in four sentences. The first sentence repeats verbatim that corresponding portion of the original which remained after the constitutional attack in *Seals.* "The reenactment of a statute is a continuation of the law as it existed prior to the reenactment insofar as the original provisions are repeated without change in the reenactment." 1A Sutherland, Statutory Construction (4th Ed. Sands) § 23.29. The

---

[17] We note the titles appended to each of the two statutes. The one we struck down in *Seals* was entitled "Reading of agreements or releases to jury prohibited." The one now before us is entitled "Reading of agreements or releases to jury prohibited. Adjustments for excessive and inadequate verdicts permitted." The title and stated purpose of legislation are, while not conclusive, valuable aids to construction. *Anderson* v. *Ludgin,* 175 Conn. 545, 554, 400 A.2d 712 (1978); *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 370, 114 A.2d 535 (1955). Where, however, the language of the act "is clear and not subject to interpretation, titles are of less significance." *Algonquin Gas Transmission Co.* v. *Zoning Board of Appeals,* 162 Conn. 50, 55, 291 A.2d 204 (1971). Given the new language in the present statute, we consider the title of some assistance in our construction.

second and third sentences are entirely new in language as well as legal effect, when we construe the statute as a whole. The third sentence is, in substance, plainly the same as the last sentence in the statute struck down in *Seals.*

In *Seals,* we pointed out that the portion of the statute remaining after the constitutional attack offered "absolutely no direction to the court concerning what steps it *may* take *after* the verdict has been returned" and because that statute was "clearly inseparable . . . the entire statute must fall." (Emphasis added.) *Seals* v. *Hickey,* supra, 355. In enacting the present statute, that portion has been included and, together with additional language, does give direction concerning what steps a trial court may take after the verdict is returned. The present statute does so, in a fashion that is constitutional under *Seals.* The defendant's constitutional attack upon it must fail.

The statute struck down in *Seals,* while prohibiting the reading to the jury or introduction into evidence in any other way of the agreements or releases referred, did, nevertheless, provide the following: "[E]xcept the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to such action pursuant to such agreement not to sue or such release of claim. . . . " This provision gave the court unbridled discretion in dealing with the verdict and thereby violated the defendant's constitutional right to trial by jury under article first, § 19, of the Connectict constitution. That language not only no longer appears in the present statute, but the additional language in the second and third sentences, when we view the statute as a whole, offers proper constitutional guidelines to the trial court *after* the verdict.

In § 52-216a as amended after *Seals,* the word "if" begins the second and third sentences both of which

are the same except that the second sentence deals with a verdict found "excessive as a matter of law" and remittitur and the third sentence deals with a verdict found "inadequate as a matter of law" and additur. The word "if," which is a conjunction, is entitled to be accorded its common meaning here of "in the event that." Webster, Third New International Dictionary, p. 1124; General Statutes § 1-1; see generally *Colt* v. *Hubbard,* 33 Conn. 281, 286 (1866). So interpreted, it introduces the condition or contingency that immediately follows it in the first clause of each of these two sentences. In the event that the court concludes that the verdict is excessive or inadequate "as a matter of law," it "shall order" a remittitur or additur, as the case may be. Where either a remittitur or an additur is ordered, and the party so ordered does not comply, the statute further directs that the court "shall set aside the verdict" and order a new trial.[18] We point out that the statute in *Seals* did not provide for the ordering of a new trial. Cf. *Seals* v. *Hickey,* supra, 353.

In each of these sentences, the condition imported into the trial court's conclusion of excessiveness or inadequacy is that it must so conclude "as a matter of law," prior to proceeding further either by remittitur or additur with the new trial option. The terms "as a matter of law" are legal terms and, absent any legislative intent shown to the contrary, are to be presumed to be used in their legal sense.[19] *Bradley* v. *United States,* 410 U.S. 605, 609, 93 S. Ct. 1511, 35 L. Ed.

[18] We note that the statute in *Seals* employed the words "shall" and "may" with the latter term being found only in that portion which gave the trial court the unbridled or unfettered discretion. See *Jones* v. *Civil Service Commission,* 175 Conn. 504, 509, 400 A.2d 721 (1978). On the other hand, the present statute contains the word "shall" seven times and "may" not at all.

[19] The same applies, of course, to the terms "remittitur" and "additur" in this statute.

Moreover, nothing we say today in any way changes the time-honored rule that an injured party is entitled to full recovery only once for the harm suffered. See *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 92 A. 883 (1915); Prosser,

2d 528 (1973); see *Faulkner* v. *Solazzi,* 79 Conn. 541, 546, 65 A. 947 (1907); *Leavenworth* v. *Marshall,* 19 Conn. 1, 4 (1848); Sutherland, supra, § 47.30. "Words with a fixed legal or judicially settled meaning must be presumed to have been used in that sense. *United States* v. *Merriam,* 263 U.S. 179, 187, 44 S. Ct. 69, 68 L. Ed. 240 (1923)." *In re Nissen's Estate,* 345 F.2d 230, 235 (4th Cir. 1965). In ascertaining legislative intent "[r]ather than using terms in their everyday sense, '[t]he law uses familiar legal expressions in their familiar legal sense.' *Henry* v. *United States,* 251 U.S. 393, 395 [40 S. Ct. 185, 64 L. Ed. 322] (1920)." *Bradley* v. *United States,* supra.

The requirement, therefore, that this conclusion be reached "as a matter of law" serves under the circumstances to overcome the defendant's claim. The legal significance of this requirement is obvious; it does not import unbridled discretion, but rather mandates the correct application of relevant legal principles to circumstances in making the conclusion, which, if clearly erroneous, constitutes reversible error. Read in conjunction with that portion of the *Seals* statute that was reenacted in the present statute, it makes eminent common sense to say that, by enacting the present statute, the legislature expressed what it intended that the trial court do after the verdict. In making its postverdict determination on the issue of any claimed excessiveness or inadequacy, the trial court was directed to consider the amount of money paid to a plaintiff as the result of either "[any] agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action." General Statutes (Rev. to 1983) § 52-216a. This makes the statute, unlike the one we construed in *Seals,* "workable." *Seals* v. *Hickey,* supra, 355.

<hr>

Torts (4th Ed. 1971) § 48; 2 Harper & James, Torts (1956) § 25.2. Contrary to the views expressed in the concurring opinion, we do not impute to § 52-216a any legislative intent to install "the criterion of the maximum that a court or jury could legally award as damages."

"Litigants have a constitutional right to have questions of fact decided by a jury" and that " 'includes the right to have the jury, rather than the court, pass upon the factual issue of damages. . . .' " Id., 350–51. The procedure permitted by the present statute does not permit the trial court to invade that function as we found the *Seals* statute did. The trial court now makes its determination as a pure question of law. Cf. *Seals* v. *Hickey,* supra, 352–53. Having invalidated the statute in *Seals,* we said that in cases tried to a jury, the procedure, "subject to future legislation," would revert to that preexisting the enactment of that statute. That meant that prior "settlements" would be handled as at common law for which we cited, inter alia, *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978). The statute in this case is that "future legislation" referred to in *Seals,* and the trial court, in both jury and court cases, makes its determination of excessiveness or inadequacy as pointed out above. Our conclusion that the legislature intended this and that the statute, fairly read, accomplishes this constitutionally is supported by, but not entirely dependent upon, the presumption that the legislature was aware of the history of the relevant legislation as judicially construed. *Sawyer Savings Bank* v. *American Trading Co.,* 176 Conn. 185, 189, 405 A.2d 635 (1978).

Turning to the last sentence of the statute which permits the introduction of agreements or releases in a trial to the court, we must construe a part of a statute, so far as reasonably possible, as operative and harmonious with every other part of the statute. *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 621, 363 A.2d 1038 (1975); *Kerin* v. *Goldfarb,* 160 Conn. 463, 467, 280 A.2d 143 (1971); *McAdams* v. *Barbieri,* 143 Conn. 405, 418, 123 A.2d 182 (1956). "Courts should not adopt a construction of the statute leading to 'difficult and possibly bizarre results.' " (Citations omit-

ted.) *Atwood* v. *Regional School District No. 15,* supra, 621–22. The last sentence of § 52-216a simply provides: "This section shall not prohibit the introduction of such agreement or release in a trial to the court." In a trial to the court, the trial judge performs a dual function; he is the authority who must adopt the correct principles of law to apply to the facts which he finds in leading to the judgment rendered. See, e.g., *Bianchi* v. *Denholm & McKay Co.,* 302 Mass. 469, 471–72, 19 N.E.2d 697 (1939); see also 89 C.J.S., Trial § 574. It is readily apparent that, in cases tried to the court to which this statute applies, the legislature intended, considering the dual function of the judge in that instance, to permit the introduction of any such agreement or release. Our construction of this part of § 52-216a is consistent with the intent of the legislature in such cases in that it assists the court, not only in arriving at an award of fair and just compensation where liability is found, but also in effectuating "the better policy, removing whatever possibility for prejudice [that] may exist"; *Kosko* v. *Kohler,* supra, 387; where any agreement or release is brought to a jury's attention. In trials to the court, it is assumed that the trial court will utilize only competent evidence in arriving at its decision and will disregard that which is incompetent. See *Avery* v. *Ginsburg,* 92 Conn. 208, 211–12, 102 A. 589 (1917); see *Bizzell* v. *Bizzell,* 247 N.C. 590, 605, 101 S.E.2d 668 (1958). Consequently, the matter of an agreement or release is handled under § 52-216a in a trial to the court with no substantive difference from the way it is handled in a trial to a jury.

There is error, the judgment is set aside and a new trial is ordered limited to the issue of damages.

In this opinion PARSKEY, DANNEHY and QUINN, Js., concurred.

SHEA, J., concurring. Although I agree with the rescript, which finds error and orders a new trial limited to damages, I disagree with the majority's construction of Public Acts 1982, No. 82-406, § 3, to modify the common law rule that prior payments made by one joint tortfeasor are to be credited in reduction of any judgment rendered against another joint tortfeasor. I also take issue with the novel analysis of our non-retroactivity statute, General Statutes § 55-3, that declares its provisions inapplicable because "the plaintiff in such a matter has no right to the payment of damages from the defendant(s) until entitlement to damages has been so adjudged *after* a trial to a jury or a court." (Emphasis in original.)

I

The majority opinion, though less than clear on the point, apparently construes § 52-216a as amended by Public Acts 1982, No. 82-406, § 3, to permit a jury verdict to be reduced by amounts received by a plaintiff from other joint tortfeasors only when such additional compensation together with the verdict would result in a recovery of damages that are excessive as a matter of law. Presumably such payments from others would also be considered in determining whether a verdict is inadequate as a matter of law. Between these extremes of excessiveness and inadequacy as a matter of law, the outer limits of permissible jury discretion in awarding damages, compensation already received from other tortfeasors is to be entirely ignored and treated as a bonus in addition to the fair and reasonable award for the damages sustained as determined by the jury without awareness of such prior payments. In order to avoid any infringement upon the constitutional right to jury trial in civil cases, the same change in the substantive law perceived by the majority

in the amended second and third sentences of § 52-216a, which refer to a court concluding that a verdict is excessive or inadequate, is also made applicable in trials without a jury. In deference to the last sentence that expressly contemplates the introduction in evidence of a settlement agreement in a trial to the court, however, the majority opinion blandly decrees that the matter is to be handled by the court "with no substantive difference from the way it is handled in a trial to a jury."

Once again this court has given substantive impact to a procedural enactment designed solely to insure that a jury will not be influenced in reaching its verdict against a defendant tortfeasor by learning that a plaintiff has settled his claim against another tortfeasor. In *Fritz* v. *Madow,* 179 Conn. 269, 273, 426 A.2d 268 (1979), the court construed the use of the word "may" rather than "shall" in the original version of General Statutes § 52-216a, providing that the court *"may* deduct from the verdict any amount of money received" (emphasis added) from another tortfeasor, as "placing the adjustment of the jury verdict solely within the sound discretion of the trial court." Belatedly recognizing that the imposition upon the trial court of a duty to interfere with the discretion of a jury to award damages within the broad territory lying between excessiveness and inadequacy as a matter of law infringed upon the constitutional right of trial by jury in civil cases, the court in *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982), proceeded to declare § 52-216a unconstitutional rather than revise its initial construction of the statute.

In this current encounter with the legislative response to *Seals* v. *Hickey,* supra, in the form of the amendment to § 52-216a effectuated by Public Acts 1982, No. 82-406, § 3, the court, in pursuance of the

principle eschewed in *Seals* that an interpretation of a statute that upholds its constitutionality is to be favored, construes this enactment to abrogate the well established common law rule that an award of damages must be reduced by payments received from other tortfeasors involved in the same accident. The result of this present perception of substantive import in a procedural enactment is that only when the jury verdict added to the sum previously received as compensation from another tortfeasor exceeds the upper limit of permissible jury generosity for the damages proved by the evidence may the court reduce the verdict rendered. This construction of the statute creates the anomaly that plaintiffs who are fortunate enough to be damaged by several tortfeasors, as in a multiple car accident, may recover compensation for the same damages against each of several tortfeasors in a succession of settlements until the ceiling of excessiveness as a matter of law is reached. In contrast, the plaintiff who suffers the same loss at the hands of only one person must be satisfied with the trier's assessment of reasonable compensation so long as it falls within the extremes of inadequacy and excessiveness as a matter of law. Such disparate treatment of persons having equally legitimate claims for compensation would raise a serious question of whether any rational basis can be found to justify this evident denial of "equal protection of the laws," which the majority opinion wholly ignores though duly raised by the defendants, if the legislature had intended such a result. I am convinced, however, that nothing in the language of the statute or in its legislative history indicates such an intention.

The amendment of § 52-216a effectuated by Public Acts 1982, No. 82-406, § 3, eliminated the provision, found to be objectionable in *Seals,* that "the court at the conclusion of the trial may deduct from the verdict any amount of money received by any party" pur-

suant to a settlement agreement with another tortfeasor. It substituted two sentences which are simply declaratory of established procedure with respect to the power of the court to order a remittitur or an additur in the event that a verdict is excessive or inadequate. Although no mention is made of amounts paid by other tortfeasors, presumably such amounts are to be taken into consideration in determining excessiveness or inadequacy, as the majority opinion indicates. The amendment, however, deals only with the outer limits of excessiveness and inadequacy as a matter of law. It does not purport to deal with verdicts which, in conjunction with amounts received from other tortfeasors, are neither excessive nor inadequate. Presumably, therefore, the legislature was satisfied that the common law, which requires the deduction of such other compensatory payments, should govern in this area. See *Kosko* v. *Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978).

The legislative history of Public Acts 1982, No. 82-406, § 3, contains no suggestion of any intention to modify the common law rule that credits payments from other tortfeasors upon an award of damages. The purpose of the amendment expressed during its consideration by the legislature was simply "to make Connecticut law consistent with the law in other states and on a federal level in the determination of jury verdicts." 25 H. R. Proc., Pt. 19, 1982 Sess., pp. 6177–78 (remarks of Rep. Alfred J. Onorato). The debate related wholly to the wisdom of provisions for remittitur and additur generally, not as specially pertaining to the multiple tortfeasor situation. Id., pp. 6177–89. The legislature viewed the amendment as wholly procedural. If such a significant change in the common law as that effectuated by the opinion were contemplated, it is inconceivable that the legislative record would contain no indication of any intention to change the substantive law.

Because the opinion gives substantive effect to the second and third sentences of the statute, which provide for remittitur or additur where a "verdict" is excessive or inadequate as a matter of law, the court is compelled to extend its interpretation to judgments in non-jury trials. As the defendants contend, a substantial difference in the substantive law applicable in a jury trial as compared to a court trial would impair the free exercise of their constitutional right to a trial by jury in a civil case. *United States* v. *Jackson,* 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968). Recognizing this difficulty, the opinion declares that payments by other tortfeasors are to be "handled under § 52-216a in a trial to the court with no substantive difference than . . . in a trial to a jury." This edict seems to dictate that a trial judge should no longer determine the total amount of fair compensation that a plaintiff should receive and then deduct sums already paid by other tortfeasors. Instead the trial court must now decide what amount would constitute a marginally excessive award before subtracting such payments. Thus, in both court and jury cases in multiple tortfeasor situations, as a result of the majority opinion, the long-established rule of reasonable compensation has been replaced by the criterion of the maximum that a court or jury could legally award as damages before consideration may be given to payments received from other tortfeasors.[1]

No question arises as to the constitutionality of § 52-216a under my construction of the statute either

---

[1] Although the majority opinion in a footnote disclaims any intention to impose this standard of the maximum permissible jury award in multiple tortfeasor cases, it does not disavow its construction of General Statutes § 52-216a to permit a reduction in a verdict for damages against one tortfeasor by amounts received from other tortfeasors only when the total would be excessive as a matter of law. The opinion also professes to adhere to "the time-honored rule that an injured party is entitled to full recovery only once for the harm suffered." Any sum received as compensation in addi-

in its original or its amended form. See *Seals* v. *Hickey,* supra, 356–59 (*Shea, J.* dissenting). I, therefore, disagree with the trial court's failure to implement the statute by excluding testimony concerning the prior settlement with Jacquemin, the driver of the other vehicle involved in the accident. The ruling clearly violated the first sentence of the statute, which bars the introduction of such evidence before a jury, contemplating that the court should deduct the settlement from a verdict returned without knowledge thereof when rendering judgment.

Accordingly, I would remand the case for a new trial limited to damages. In such a trial knowledge of the prior settlement should be kept from the jury. The amount received, however, should be deducted by the court from the jury determination of reasonable damages for the injuries sustained, unless this reduction would render the total compensation of the plaintiff inadequate as a matter of law.

## II

I also disagree with the opinion of the majority in disposing of the retroactivity claim raised by the defendant Roy, holding that because liability for damages is not adjudged until after a trial, "[i]t follows, therefore, that a defendant has no 'obligation' in accordance with § 55-3 to pay damages *until that time.*" (Emphasis in original.) We have previously held that "[a] right of action, including one for personal injuries, is a vested property interest, before as well as after judgment . . . . " *Massa* v. *Nastri,* 125 Conn. 144, 147, 3 A.2d 839 (1939). The corresponding obligation of a defend-

---

tion to the amount awarded as a reasonable determination of damages for the same injuries without allowance for the prior payment must necessarily constitute an additional recovery. Presumably, therefore, the only "full recovery" which the majority would recognize would be an award that, together with compensation received from others, reached the limit of maximum permissibility.

ant to pay damages is similarly fixed at the time of the injury and subsequent legislation changing the substantive rights of the parties is presumed, in accordance with § 55-3, to operate only prospectively. *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128, 131–32, 26 A.2d 780 (1942); *Toletti* v. *Bidizcki,* 118 Conn. 531, 537, 173 A. 223 (1934). "A statute will not be given a retroactive construction by which it will impose liabilities not existing prior to its passage." *Massa* v. *Nastri,* supra, 148. The majority's view that substantive rights of the parties that have accrued may be modified by subsequent legislation until the time of trial is wholly unprecedented.

Under my construction of § 52-216a as simply a procedural enactment not modifying the substantive rights of the parties as they existed before the passage of Public Acts 1982, No. 52-406, § 3, but merely changing the procedure for implementation of those rights, no problem of retroactivity arises. Neither the common law presumption nor that created by § 55-3 against retrospective construction is applicable to a statute that is merely procedural in character and does not impose new obligations or affect the substantive rights of the parties. *Toletti* v. *Bidizcki,* supra, 536; *Zalewski* v. *Waterbury Mfg. Co.,* 89 Conn. 46, 48, 92 A. 682 (1914). Even under the majority's view that the public act effectuated a change in the substantive law, the amended statute would not be given retrospective effect by applying it to this case. Although the automobile accident occurred on September 27, 1979, about three years before the effective date of the public act, October 1, 1982, the event which gave rise to its application, the settlement of the plaintiff's claim against the other driver, Jacquemin, did not take place until November 27, 1982, after the act had become effective. I fail to comprehend, therefore, any occasion for the

significant departure from well established precedent concerning the retrospective operation of statutes upon which the majority opinion has embarked.

Accordingly I concur only in the result.