[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This civil jury case comes before the court on post-verdict motions filed by the defendant State of Connecticut.
The jury returned a verdict in the amount of $1,250,000 in favor of plaintiff Dennis Sanzone against the State of Connecticut as to this plaintiff's claim that he had suffered injuries as a result of the negligence of a State Trooper in pursuing a car being erratically operated by a juvenile around midnight over an eight mile stretch of Route 17 in Durham and North Branford. The jury additionally returned a verdict in favor of the plaintiff's wife in the amount of $10,000 as to her claim of loss of consortium.
The parties have stipulated that the plaintiffs recovered $312,500.00 from the Town of North Branford in return for release that defendant and defendant Stephen DelVecchio, a town employee, prior to trial. The parties have further stipulated that the plaintiffs recovered $200,000 in uninsured motorist benefits. Because of a partial reimbursement of the insurer for those CT Page 7129 benefits, the defendant has limited its request for a remittitur to the sum of the amount the plaintiffs received in settlement from the Town of North Branford and the balance of the uninsured motorist benefits retained by the plaintiffs, that is, a total of $379,167.00.
The post-verdict issues raised by the defendant are as follows:
1. A motion to set aside the verdict on the ground that the court erred in instructing the jury that violation of the pursuit policy enacted by the State Police was to be considered as negligence per se.
Having found that the plaintiff presented evidence that the State Police had duly adopted the policy at issue, this court continues to find that its charge was correct pursuant to the rulings of the Supreme Court to the effect that the violation of a regularly adopted policy or regulation of this sort is statutory negligence, or negligence per se. Panaroni v. Johnson, 158 Conn. 92,100-102 (1969); Hyde v. Connecticut, 122 Conn. 236, 239-30
(1936). In Staudinger v. Barrett, 208 Conn. 94, 103 (1988), the Supreme Court did not apply the negligence per se standard because of a failure of proof that a similar pursuit policy had in fact been adopted by the police department pursuant to § 14-283a(b) C.G.S.
In this case, the evidence was undisputed that the defendant had duly adopted its policy on pursuit of vehicles, Exhibit C at trial, pursuant to § 14-283a(b). Accordingly, the charge on per se negligence was warranted.
2. Motion to set aside the verdict on the ground that "[t]he damages awarded by the jury were excessive as a matter of law."
In considering a motion to set aside a verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supported the jury's verdict.Mather v. Griffin Hospital, 207 Conn. 125, 139 (1988); Campbell v.Gould, 194 Conn. 35 (1984). As the Connecticut Supreme Court has stated repeatedly, the size of the verdict alone does not determine whether it is excessive. Rather, the court must consider whether the award falls "somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was CT Page 7130 influenced by partiality, prejudice, mistake or corruption."Mather v. Griffin Hospital, 207 Conn. 139; Bartholomew v.Schweizer, 217 Conn. 671 (1991); McKirdy v. Cascio, 142 Conn. 80,86 (1955).
The amount of a damage award is a matter peculiarly within the province of the trier of fact. Mather v. Griffin Hospital,207 Conn. 138; Herb v. Kerr, 190 Conn. 136, 139 (1983); Pisel v.Stamford Hospital, 180 Conn. 314, 342 (1980).
The jury was presented with evidence to the effect that Dennis Sanzone had suffered severe physical injuries and substantial diminishment of his mental capacities when his vehicle was struck head-on by the speeding car pursued by the defendant's employee. His left femur was fractured, his left knee and tibia were crushed, and his right ankle was fractured. He received a head injury which rendered him unable to recognize his wife for several weeks, and he had to relearn the names of his own children.
The jury was presented with evidence that this self-employed carpenter was unable to walk on his own for five months, that he had to endure external rods fixating his fractured leg bones, and that he suffered great pain. They could also have found that as a result of the injuries to his leg, the plaintiff was left with a permanent injury that prevents him from being able to climb a ladder or to kneel, that his left leg turns out and is marked by scars, and that his gait is abnormal. The parties stipulated that his life expectancy is 34.3 years.
The jury was presented with evidence that may have led them to conclude that Dennis Sanzone had also suffered serious impairment of his mental capacities. Before the accident, he was capable of planning and executing the construction of houses within his trade as a carpenter, and he had excellent mechanical skills. After sustaining the head injury, he experienced great difficulty in his ability to remember, to organize tasks, and to concentrate. A neuropsychologist, Dr. Kimberly J. Sass, testified that after the accident the plaintiff tested in the "impaired range" as to functions controlled by the frontal lobes of the brain. The jury was presented with testimony that Dennis Sanzone had lost his ability to remember significant events in his own life, including his wedding day, that he was no longer able to organize the details of any large projects, and that his family is now called upon to remind him of the sort of details that fathers and husbands generally master routinely. He works as a handyman for a CT Page 7131 restaurant chain and needs assistance plotting his route to the various restaurants.
The jury may, on the basis of the evidence presented, have compensated the plaintiff for the loss of mental capacities he had once enjoyed, and for the loss of some of the attributes and memories that enrich life and make people distinctive.
This court cannot conclude that the amount awarded is excessive as compensation for all of the losses outlined above as having been supported by evidence.
The award of $10,000 to Jean Sanzone for loss of consortium is not specifically challenged as excessive, however, the court finds it not to be so on the basis that the jury was presented with testimony to the effect that her husband was physically incapacitated and unable to perform his normal activities for a substantial period of time.
The jury's verdict is supported by the evidence, and the amounts awarded do not suggest that the jury was influenced by partiality, prejudice, mistake or corruption, nor do the amounts shock the court's sense of justice.
3. Motion to remit the amount of pre-verdict settlements and recoveries.
In addition to its motion claiming that the $1,260,000.00 awarded by the jury is excessive, the defendant seeks a remittitur in the amount of the $379,167.00 in pretrial settlements and insurance benefits received by the plaintiff. In support of this motion, the defendant invokes § 52-216a C.G.S.
That statute provides that the jury shall not be notified in any way of any pretrial settlements or releases against claimed joint tortfeasors. It also provides that "[i]f the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial."
The accident at issue in this case took place on October 11, 1985, and the issue of recoveries from claimed joint tortfeasors is therefore not affected by General Statutes § 52-572h or the other provisions known as "Tort Reform" legislation which took effect in CT Page 7132 October 1, 1986.
The defendant takes the position that because a plaintiff may recover only once for the harm suffered; Gionfriddo v. GartenhausCafe, 211 Conn. 67, 74 (1989); the court should remit the amount the plaintiffs have received over and above the jury's award.
The defendant apparently argues that Gionfriddo overturned the Supreme Court's ruling in Peck v. Jacquemin, 196 Conn. 53 (1985). In that case, as in the case before this court, the plaintiff had settled with one of two defendants and then proceeded to recover a verdict against the other. Parsing the provisions of § 52-216a
C.G.S., which had been amended in response to the ruling in Sealsv. Hickey, 186 Conn. 337 (1982), the Supreme Court found that the duty of the trial court in reviewing a verdict as to a plaintiff who had already received monies in settlement, was as follows:
 In making its postverdict determination on the issue of any claimed excessiveness or inadequacy, the trial court was directed to consider the amount of money paid to a plaintiff as the result of either "[any] agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action." General Statutes (Rev. to 1983) § 52-216a. This makes the statute, unlike the one we construed in Seals, `workable.'
Peck v. Jacquemin, 196 Conn. 71.
Dissenting, Justice Shea stated the effect of the above interpretation of § 52-216a:
 The result of this present perception of substantive import in a procedural enactment is that only when the jury verdict added to the sum previously received as compensation from another tortfeasor exceeds the upper limit of permissible jury generosity for the damages proved by the evidence may the court reduce the verdict rendered.
Peck v. Jacquemin, 196 Conn. 76 (Shea, J. dissenting). CT Page 7133
The Supreme Court confirmed this interpretation in Alfano v.Insurance Center of Torrington, 203 Conn. 607, 610 (1987):
 In Peck v. Jacquemin, 196 Conn. 53, 491 A.2d 1043 (1985), this court construed General Statutes § 52-216a, as it had been amended following our decision in Seals v. Hickey, 186 Conn. 337, 441 A.2d 604 (1982), to permit a payment by one joint tortfeasor resulting from a settlement before trial to reduce a jury verdict against another joint tortfeasor only where the verdict otherwise would be excessive as a matter of law.
Because the loss in Alfano was a property loss, in which a finite value of lost property was established, the combined settlement and verdict amount were determined to be excessive as a matter of law.
Gionfriddo v. Gartenhaus Cafe, 211 Conn. 67, which the defendant argues marks a retreat from Peck v. Jacquemin, instead appears to leave the Peck resolution of the operation of § 52-216a
intact with regard to the situation of settlements followed by a verdict but adopts a different approach where the plaintiff's first recovery is by verdict. In Gionfriddo II, (as distinguished from the case known as Gionfriddo I, Gionfriddo v. Avis Rent A CarSystem Inc., 192 Conn. 280, 482 A.2d 306 (1984)), the plaintiff had recovered a verdict in a wrongful death action and then brought suit against another claimed tortfeasor who was not in privity with the defendant against whom judgment had entered. The Supreme Court upheld the ruling that summary judgment should have entered in favor of the subsequent defendants on the ground that the judgment in Gionfriddo I had already been satisfied.
The plaintiff's settlement with the Town of North Branford did not, unlike the verdict in Gionfriddo I, establish the amount of the damages suffered. The Supreme Court has never overturned Peckv. Jacquemin nor suggested that it would now interpret § 52-216a as requiring a remittitur in the amount of any prior settlements upon a jury determination of the plaintiff's losses.
When the Appellate Court was met in Mauro v. Yale-New HavenHospital, 31 Conn. App. 584 (1993) with the claim that Peck v.Jacquemin was no longer good law, it rejected that claim, and distinguished Alfano in the manner set forth above. The Appellate Court ruled that the trial court "correctly concluded that the jury CT Page 7134 verdict, when added to the amount of the pretrial settlement, was not excessive." Mauro v. Yale-New Haven Hospital,31 Conn. App. 590-91.
This court is not free, as the defendant urges, to follow the approach to § 52-216a of the United States District Court in Yuzariv. Southern Auto Sales, 688 F. Sup. 825 (D. Conn. 1988) nor to ignore the ruling of the Appellate Court in Mauro. It is for the Supreme Court, not the inferior courts, to reevaluate the continued validity of its rulings. Brunswick v. Inland Wetlands Commissionof Town of Bethany, 25 Conn. App. 543, 553, rev'd. 222 Conn. 541, on remand 29 Conn. App. 634.
Accordingly, the task before this court is the task performed by the trial court in Mauro: to determine whether the verdict is excessive when added to the amount of the pretrial recoveries.
The court concludes that it is not. Dennis Sanzone endured great pain, serious surgery and its painful aftermath, and a severe truncation of his years of agility as an active young adult. He was left with a permanent physical disability that limits him in ordinary daily movements and in his work. The losses to his mental capacities constitute impairments of a very great order, diminishing him in ways fundamental to his standing in his family and in his work. This court cannot say that a total recovery in the amount of $1,629,167.00 shocks the court's sense of justice or falls outside the limits of fair and reasonable compensation or that such an outcome must be due to partiality, prejudice or mistake. Mather v. Griffin Hospital, 207 Conn. 139; Mauro v. Yale-NewHaven Hospital, 31 Conn. App. 591.
All of the defendants' post-verdict motions are denied, and judgment shall enter in accordance with the verdict, without remittitur.
Beverly J. Hodgson Judge of the Superior Court CT Page 7135