RAYMOND G. ALFANO, SR. *v.* INSURANCE
CENTER OF TORRINGTON
(12957)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

Argued March 11—decision released May 26, 1987

*Charles F. Brower,* for the appellant (plaintiff).

*John W. Lemega,* with whom, on the brief, was *Thomas J. Hagarty, Jr.,* for the appellee (defendant).

SHEA, J. The plaintiff, Raymond G. Alfano, brought this action against the defendant, Insurance Center of Torrington, for its negligence in failing to procure fire insurance coverage for a building in Torrington that he had bought three days before a fire occurred. The original complaint also contained a malpractice claim against the attorney who had represented the plaintiff in purchasing the property for having failed to advise him of the need for insurance at the time the property was transferred to him. Before trial, the claim against the attorney was settled by a payment of $15,000 to the plaintiff, and the complaint was amended accordingly to withdraw the malpractice claim. The claim against the defendant insurance agency was then tried to a jury, which returned a verdict for the plaintiff, finding that he had sustained damages of $30,000 but had been 35 percent contributorily negligent and thus should be awarded $19,500.

The trial court denied the defendant's motion to set aside the verdict but ordered a remittitur of $15,000, the amount the plaintiff had received from his attorney in settlement of the malpractice claim, of which the jury had been unaware. Initially, the defendant appealed from the judgment rendered after the court had refused to set aside the verdict. After the court had ordered a new trial pursuant to General Statutes

§ 52-216a[1] following the plaintiff's refusal to comply with the remittitur, the plaintiff filed a cross appeal. The defendant later withdrew its appeal, leaving only the cross appeal to be decided.

The plaintiff claims the order of remittitur was erroneous for two reasons: (1) there was evidence before the jury that would have supported a finding that he had sustained damages substantially in excess of the $30,000 found by the jury; and (2) the remittitur effectively penalized him a second time for the negligence of his attorney, which the jury, pursuant to the charge, had imputed to him in reducing his recovery by 35 percent because of contributory negligence. We find no error.

I

With respect to his claim that the evidence supported a larger verdict, the plaintiff refers to some testimony

[1] General Statutes § 52-216a, as amended to the date of trial in 1985, provided: "READING OF AGREEMENTS OR RELEASES TO JURY PROHIBITED. ADJUSTMENTS FOR EXCESSIVE AND INADEQUATE VERDICTS PERMITTED. An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court."

In *Peck* v. *Jacquemin*, 196 Conn. 53, 60–61, 491 A.2d 1043 (1985), it was held that the amendments to § 52-216a effectuated by Public Acts 1982, No. 82-406, applied to cases tried after its effective date, October 1, 1982, even though the claim may have arisen before that date. The amended version of § 52-216a, therefore, was applicable to this case, in which the jury rendered its verdict on November 25, 1985, although the fire loss occurred on December 24, 1981.

that the value of his building on December 24, 1981, when it was destroyed by fire, was greater than the $30,000 found by the jury.[2] He does not contend, however, that the jury was bound to give full credit to this testimony. Although his complaint also alleged other elements of damage, such as the rental value of the building from the date of the fire, interest and attorney's fees, he has not challenged the refusal of the court to submit these items to the jury for its consideration. The finding of the jury that the plaintiff had sustained damages of $30,000, therefore, cannot be successfully attacked and must be deemed a proper basis for the trial court to have relied upon in ordering the remittitur.

In *Peck* v. *Jacquemin,* 196 Conn. 53, 491 A.2d 1043 (1985), this court construed General Statutes § 52-216a, as it had been amended following our decision in *Seals* v. *Hickey,* 186 Conn. 337, 441 A.2d 604 (1982), to permit a payment by one joint tortfeasor resulting from a settlement before trial to reduce a jury verdict against another joint tortfeasor only where the verdict otherwise would be excessive as a matter of law.[3] "In making its postverdict determination on the issue of any claimed excessiveness . . . the trial court [is] directed to consider the amount of money paid to a plaintiff as the result of [a settlement with another tortfeasor]." *Peck* v. *Jacquemin,* supra, 71.

---

[2] In his brief the plaintiff refers to evidence of the valuation of the property at $30,667 for the purpose of assessment by the town of Torrington. He also refers to testimony of one of his appraisers that the building had a value of "approximately $30,000" and of another that its value was between $50,000 and $55,000.

[3] We note the amendment to General Statutes § 52-225a, effective October 1, 1986, which requires the reduction of a damages award in a personal injury or wrongful death action by amounts received from collateral sources, including joint tortfeasors. See General Statutes § 52-225b. That amendment, even upon a retrial, would not apply to this action for a fire loss because it is limited to personal injury and wrongful death actions and also because it applies by its terms only to actions "occurring on or after October 1, 1986."

It can hardly be disputed that in this case the award of $19,500 to the plaintiff was excessive as a matter of law, because, when the $15,000 received in the settlement with his attorney is added to that sum, the plaintiff would receive total compensation of $34,500. This amount is $4500 greater than the jury's finding of $30,000 as the amount of the plaintiff's loss from the fire. The verdict was, therefore, excessive as a matter of law by $4500, even if the jury had made no deduction for the contributory negligence of the plaintiff.

Like the finding of $30,000 as the total loss the plaintiff sustained, the finding of 35 percent contributory negligence by the jury, corresponding to a reduction of $10,500 in the award, cannot be successfully challenged, nor has the plaintiff attempted to do so. Since the resulting verdict of $19,500 represents a legally unassailable determination of fair compensation for the plaintiff's loss under our comparative negligence statute, General Statutes (Rev. to 1981) § 52-572h, any additional compensation received by the plaintiff for that loss must be deemed excessive as a matter of law. Accordingly, the trial court's order that the plaintiff remit the $15,000 he had received in the settlement of his claim against his attorney, of which the jury was unaware in rendering its verdict, was entirely appropriate, unless the effect of the order was to duplicate wholly or partly the $10,500 reduction in the award attributable to the plaintiff's contributory negligence. The plaintiff does not claim otherwise, but maintains that such a duplication did result from the remittitur order.

## II

The plaintiff claims that the finding of 35 percent contributory negligence on his part was based wholly or partly on the negligence of the attorney who represented him in purchasing the property, which was

imputed to him under the court's instructions. Thus he maintains that the remittitur order reduced the award a second time for the same negligence of his attorney that had been the basis for the jury's reduction of $10,500 in the award. To the extent that the contributory negligence finding may have been based upon the plaintiff's personal negligence, of course, the application of the payment received from the attorney as a joint tortfeasor would not duplicate any reduction in the verdict corresponding to that finding.

The special defense of contributory negligence pleaded by the defendant relied upon the negligence of both the plaintiff and his attorney in failing to contact the insurance agency before the closing in sufficient time "to obtain coverage on this building which was substandard and not insurable through normal commercial insurers." The trial court submitted to the jury both the personal negligence of the plaintiff and the negligence of his attorney, which was imputed to the plaintiff, as the basis for finding contributory negligence. In finding contributory negligence on the part of the plaintiff, the jury did not differentiate between his negligence and that of his attorney, imputed to him under principles of agency. See *Nowak* v. *Nowak,* 175 Conn. 112, 126, 394 A.2d 716 (1978). Neither party submitted interrogatories for the purpose of resolving this factual question. See Practice Book § 312. It cannot be ascertained, therefore, to what extent, if any, the finding of contributory negligence rests upon the negligence of the plaintiff's attorney.

The plaintiff contends, however, that there was insufficient evidence to justify a finding of any personal negligence on his part and, therefore, the contributory negligence determination must rest entirely upon the imputed negligence of his attorney. The trial court has rejected this claim in the articulation of its decision that has been filed. That conclusion is adequately supported

by the trial transcript. There was testimony that the plaintiff, an experienced businessman, was aware that fire insurance was needed at the time of the closing of title. The mortgage commitment he had received from his bank so informed him, but he failed to contact the defendant agency until after the closing. We agree with the trial court that there was substantial evidence to support a jury finding of personal negligence on the part of the plaintiff, apart from the negligence of his attorney.

The defendant, in contradistinction to the plaintiff's position, maintains that, because it is conceivable that the finding of contributory negligence rests entirely upon the personal negligence of the plaintiff, his argument "that the remittitur constituted a double deduction is nothing more than speculation." According to the defendant, the general verdict rule forecloses consideration of the claim that the remittitur may have twice penalized the plaintiff for the same negligence, because the actual basis for the jury's decision remains unknown.

It is not entirely clear that the general verdict rule is applicable to a verdict resolving some issues in favor of the plaintiff and others in favor of the defendant, as in the present case. The usual statement of the rule is that a general verdict for one party raises a presumption that the jury found every issue in favor of "the prevailing party." *Finley* v. *Aetna Life & Casualty Co.*, 202 Conn. 190, 202, 520 A.2d 208 (1987); *Colucci* v. *Pinette*, 185 Conn. 483, 489–90, 441 A.2d 574 (1981). The plaintiff would ordinarily be regarded as "the prevailing party," since he did recover damages against the defendant, but it is plain that he did not prevail on the issue of contributory negligence. Even if the finding of contributory negligence on the part of the plaintiff may be regarded as a separate verdict as to which the defendant has prevailed, the presumption dictated

by the general verdict rule that all the issues concerned in that determination must have been decided in favor of the defendant would indicate that the finding was based upon both the personal negligence of the plaintiff and the imputed negligence of his attorney, as the special defense alleged.

Although we find the general verdict rule inapplicable, we nevertheless uphold the trial court's remittitur order. Since the plaintiff cannot demonstrate that the finding of contributory negligence was based wholly on the imputed negligence of his attorney and the defendant cannot show that it was based wholly on the personal negligence of the plaintiff, it is fair to assume only that it was based partly on each. Accordingly, some part of the $15,000 the plaintiff had received from his attorney should have been applied to reduce the $19,500 verdict, which would otherwise be excessive. The assumption that the jury based its finding on both imputed and personal negligence, however, while useful in establishing that the verdict was probably excessive in some degree, is not helpful in deciding the amount of a remittitur to order. Such a question can only be resolved by submitting a proper inquiry to the jury at a new trial.

When a verdict is excessive as a matter of law, the amount of the remittitur, which the statutes, General Statutes §§ 52-216a and 52-228b, require to be ordered before a new trial may be had, rests largely within the discretion of the trial court. "Its action is entitled to full support unless it abused its discretion." *Allen* v. *Giuliano,* 144 Conn. 573, 578, 135 A.2d 904 (1957). "In determining whether the trial court abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." *Brooks* v. *Singer,* 147 Conn. 719, 720, 158 A.2d 745 (1960).

In ordering a remittitur of $15,000, the trial court chose an alternative corresponding to the assumption that the contributory negligence finding was based entirely on the personal negligence of the plaintiff and, therefore, no duplication of the reduction made by the jury could occur. The denial of any remittitur whatsoever would require the assumption that the finding was based wholly on the imputed negligence of the plaintiff's attorney, which had already resulted in reducing the award from $30,000 to $19,500. The trial court was not obliged to select a sum between these two extremes for the purpose of a remittitur, because any basis for doing so must be viewed as speculative.

Under the unique circumstances of this case, the choice made by the trial court in order to comply with the statutes directing a remittitur before ordering a new trial where a verdict is excessive was appropriate. See General Statutes §§ 52-216a, 52-228b. The remittitur order gave the plaintiff the choice of complying therewith or having a new trial where he would have an opportunity to clarify any finding of contributory negligence made by the jury through the use of interrogatories. A refusal to order any remittitur, on the other hand, would have left the defendant without any effective remedy for a verdict that must be deemed excessive unless no personal negligence of the plaintiff was relied upon by the jury in making its finding of contributory negligence, an assumption that is wholly speculative. On an appeal following such a refusal, the defendant could not have demonstrated that the finding of contributory negligence is based wholly upon such personal negligence any more successfully than the plaintiff has shown that the finding rests entirely on imputed negligence. The defendant, however, would have been deprived of the further opportunity to resolve this ambiguity in the finding that the remittitur order

provides to the plaintiff through the alternative of a new trial. We conclude that the trial court chose the preferable alternative.

There is no error.

In this opinion the other justices concurred.