**Haim YUZARI, et al., Plaintiffs,**

v.

**SOUTHERN AUTO SALES, et al., Defendants.**

**Civ. A. No. H–84–759 (RCZ).**

United States District Court, D. Connecticut.

June 29, 1988.

---

826

jury returned verdicts for the plaintiff Haim Yuzari in the amount of $1,000,000.00, for the plaintiff Nahemi Yuzari's loss of consortium in the amount of $100,000.00, and for the plaintiff Naftaly Hirshman in the amount of $10,000.00. The jury also found the plaintiffs Haim Yuzari and Naftaly Hirshman to be 35 percent contributorily negligent, and accordingly reduced the amount of their respective awards to $650,000.00 for Mr. Yuzari and to $6,500.00 for Mr. Hirshman. Prior to the rendering of these verdicts, Mr. Yuzari had already received $309,000.00 from settling defendants, and Mr. Hirshman had received $11,000.00.[1]

Subsequent to the verdicts, the sole defendant that had not settled, Southern Auto Sales ("Southern Auto"), moved for a remittitur, seeking to have set off against the verdicts the settlement amounts previously paid to the plaintiffs. Additionally, Southern Auto sought a reduction in the award of damages to Mrs. Yuzari on the ground that her claim for loss of consortium should be reduced by the percentage of contributory negligence which the jury ascribed to Mr. Yuzari. The plaintiffs, on their part, requested an additur based on the claim that the jury verdict was inadequate to compensate them for the injuries that they suffered.

Ira Ressler, Ressler & Ressler, New York City, for plaintiffs.

Edward S. Ludorf, Winona W. Zimberlin, Howd & Ludorf, Hartford, Conn., for defendants.

## RULING ON POST–TRIAL MOTIONS

ZAMPANO, Senior District Judge.

### I. *Background*

The above-entitled personal injury action was tried to conclusion before a jury. The

### II. *Discussion*

#### A. *Motion for Remittitur*

The plaintiffs contend that under Conn.Gen.Stat. § 52–216a,[2] this Court should deduct settlement amounts from the

1. The plaintiffs indicate that Mr. Yuzari has received $314,000.00 and that Mr. Hirshman has received $6,000.00. These figures are inconsistent with those presented at trial, however, and the Court will use the amounts referred to in the text above, subject to documentary evidence that these figures are incorrect.

2. § 52–216a provides: An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court.

jury verdicts only where the verdicts are "excessive as a matter of law." The plaintiffs argue that, even if the amounts received in settlement are added to the jury verdicts, they are not excessive as a matter of law, considering the severity of the injuries sustained. Southern Auto responds that set-off is appropriate under the circumstances of this case.

Section 52–216a has been a recurrent source of consternation in the Connecticut state courts. The Connecticut Supreme Court declared the predecessor version of § 52–216a unconstitutional because it was found to afford "unbridled discretion" to a trial judge to deduct amounts received in settlement from a jury verdict,[3] thereby denying the defendant the right to a jury trial under the Connecticut Constitution by usurping the role of the jury as the final arbiter of damages. *See Seals v. Hickey,* 186 Conn. 337, 352, 441 A.2d 604 (1982). After a revision which included the option for a new trial where additur or remittitur is ordered, as well as the standard requiring, as prerequisite to additur or remittitur, a finding of inadequacy or excessiveness of the verdict as a matter of law,[4] the statute again came under constitutional attack in *Peck v. Jacquemin,* 196 Conn. 53, 491 A.2d 1043 (1985).

In *Peck,* the plaintiff brought suit against two defendants for injuries sustained in an auto accident. *Id.* at 54, 491 A.2d 1043. The plaintiff settled with one defendant, and tried the case to conclusion against the other. *Id.* The trial judge instructed the jury that, in the event the nonsettling defendant was found liable, he was entitled to a set-off in the amount of the settlement. *Id.* at 57 n. 8, 491 A.2d 1043. The jury rendered a verdict in favor of the plaintiff, who appealed after the trial court denied his motions to set aside the verdict and for a new trial, as well as his motion for an additur. The plaintiff based

his appeal of the verdict, in part, on the argument that § 52–216a prohibited bringing settlement to the attention of the jury. On appeal, the defendant claimed that the revision of § 52–216a conferred upon a trial court the same broad discretion found to be violative of the defendant's right to a jury trial in *Seals.*

The Connecticut Supreme Court disagreed, finding that the new trial option and the "as a matter of law" standard sufficiently cabined the discretion of the trial judge. *Id.* at 72, 491 A.2d 1043. The court observed that the question of whether additur or remittitur was appropriate under the statute was "a pure question of law" that required the trial court merely "to consider the amount of the money paid to the plaintiff as a result of settlement." *Id.* at 71, 491 A.2d 1043. The common law rule of set-off[5] thus met its demise under the revised, and constitutionally sound, version of § 52–216a. Justice Shea, however, noted in dissent that the majority's holding in *Peck* rendered settlement amounts "a bonus in addition to the fair and reasonable damages sustained as determined by the jury...." *Id.* at 74, 491 A.2d 1043 (Shea, J., dissenting). This comment is particularly significant in light of Justice Shea's subsequent majority opinion in *Alfano v. Ins. Center of Torrington,* 203 Conn. 607, 525 A.2d 1338 (1987).

In *Alfano,* the jury rendered a $30,000.00 verdict in favor of the plaintiff, and also found the plaintiff 35 percent contributorily negligent. *Id.* at 608, 525 A.2d 1338. The verdict was reduced to $19,500.00. *Id.* Upon motion of the defendant, the trial court also ordered that $15,000.00 received in a settlement from another defendant be remitted. *Id.* The plaintiff appealed the order of remittitur, but the Connecticut Supreme Court affirmed. In concluding that the verdict would be excessive as a

---

**3.** The constitutionally infirm portion of the prior version of § 52–216a provided that "The court at the conclusion of the trial may deduct from the verdict any amount of money received by any party to the action pursuant to an agreement not to sue or a release of claim...."

**4.** This standard codified the common law requirement of a finding of an inadequate or excessive verdict as a matter of law under the prior version of the statute. *See Seals,* 186 Conn. at 348, 441 A.2d 604.

**5.** *See Kosko v. Kohler,* 176 Conn. 383, 387, 407 A.2d 1009 (1978).

matter of law if the settlement amount were not deducted, the court stated that the jury's finding of total loss or harm, as well as the jury's determination of contributory negligence, were factual conclusions not subject to alteration by the trial court. *Id.* at 611, 525 A.2d 1338. Consequently, the sum arrived at when the total verdict is reduced by contributory negligence represents a "legally unassailable determination of fair compensation for the plaintiff's loss." *Id.* Therefore, "any additional compensation received by the plaintiff for that loss *must* be deemed excessive as a matter of law" (emphasis added). *Id.* This statement demarks a departure from the approach followed in *Peck,* where the court noted that settlement amounts were merely factors to be considered when deciding whether a verdict is excessive as a matter of law. 196 Conn. at 71, 491 A.2d 1043. This apparent shift recently drew comment in *Ames v. Sears, Roebuck & Co.,* 206 Conn. 16, 536 A.2d 563 (1988).

In *Ames* the defendant argued, in seeking a writ of *audita querela,*[6] that a jury verdict in plaintiff's favor should be offset by money received in a preverdict settlement. 206 Conn. at 20, 536 A.2d 563. In confronting the contention that the claim was not subject to review on appeal because it was not raised below, the defendant asserted that attempting to argue the point under *Peck,* which was the controlling precedent at the time of appeal, would have been futile because that decision made it clear that settlements need only be "considered" by the trial judge in determining whether a verdict was excessive as a matter of law. *Id.* at 22, 536 A.2d 563. The defendant further asserted that the *Alfano* decision had changed the law so that a jury verdict which is not reduced by settlement amounts would be excessive as a matter of law, and that the defendant

should thus be allowed to raise the claim on appeal. *Id.* at 22–23, 536 A.2d 563. The Connecticut Supreme Court did not deny that a change in the law had occurred, but refused to address the issue as not properly before it on the petition for *audita querela.* *Id.* at 23, 536 A.2d 563. *Ames* nonetheless indicates that the Connecticut Supreme Court has at least countenanced what appears to be an alteration in the law under § 52–216a that would revive the common law rule of set-off as stated in *Kosko,* 176 Conn. at 387, 407 A.2d 1009.

Applying these precedents to the facts of the instant matter, the Court finds the approach adopted in *Alfano,* rather than that of *Peck,* to be the more reasonable and logical interpretation of § 52–216a, as well as more consistent with the intent underlying the revision of § 52–216a. The legislative objective of § 52–216a's revision was to preserve the province and function of the jury primarily by providing the option of a new trial[7] to a party ordered to remit or add to the verdict. The *Seals* court declared the prior version of § 52–216a unconstitutional because the trial court could upset the jury's findings concerning damages represented by the monetary award without providing any recourse for the affected party. The holding in *Peck* is, however, inconsistent with this solicitude for the role, findings, and conclusions of the jury.

It is long-settled that the jury determines total damages, and that an injured party is entitled to full recovery only once for the harm suffered. *See Dwy v. Connecticut Co.,* 89 Conn. 74 (1915). Therefore, the verdict rendered by the jury under proper instructions represents an amount intended to recompense completely the plaintiff for the harm incurred. The approach adopted in *Peck,* however, results in the court's

6. A writ of *audita querela* provides a defendant with the means to obtain relief from the consequences of a judgment because of some matter of defense or discharge arising since the rendition of judgment which could not be taken advantage of otherwise. The writ may also lie for matters arising before judgment where the defendant had no opportunity to raise such matters in defense. In federal court, the writ has been abolished and replaced by a motion for

relief from judgment pursuant to Fed.R.Civ.P. 60(b).

7. Despite the *Peck* court's focus on the "as a matter of law" standard as a saving grace of the revision, that standard had already been read into the prior version of § 52–216a. *See Seals,* 186 Conn. at 348, 441 A.2d 604.

reviewing total damages *plus* amounts received in settlement to determine whether the jury has been too stingy or generous as a matter of law. This review in effect entails the determination of what the jury *could* have given the plaintiff. Indeed, as Justice Shea has pointed out in the context of remittitur:

> The result of ... [the *Peck* majority's] perception of ... [§ 52–216a] is that only when the jury verdict added to the sum previously received as compensation from another tortfeasor exceeds the upper limit of permissible jury generosity for the damages proved by the evidence may the court reduce the verdict rendered. This construction of the statute creates the anomaly that plaintiffs who are fortunate enough to be damaged by several tortfeasors, as in a multiple car accident, may recover compensation for the same damages against each of several tortfeasors in a succession of settlements until the ceiling of excessiveness as a matter of law is reached.

*Peck*, 196 Conn. at 72, 491 A.2d 1043 (Shea, J., dissenting). Justice Shea's language illustrates that the determination of the excessiveness of a verdict as a matter of law under the approach adopted in *Peck* may actually result in the rejection of the jury's factual findings regarding damages—findings which are to be regarded as "unassailable." *See Alfano*, 203 Conn. at 611, 525 A.2d 1338. The trial judge who does not set off amounts received in settlement will therefore be substituting his judgment for the jury's on the issue of total damages.

In accordance with the holding in *Alfano*, and the above reasoning, Southern Auto's motion for remittitur is hereby GRANTED. Mr. Yuzari's recovery is accordingly reduced to $341,000.00 ($650,000.00–$309,000.00); Mr. Hirshman's verdict is reduced to $0.00 ($10,000.00–$11,000.00). The plaintiffs' motion for additur is hereby DENIED.

## B. *Motion to Reduce Damages for Loss of Consortium*

■ The second issue to be addressed is whether Mrs. Yuzari's award for loss of consortium must be reduced in proportion to the contributory negligence that the jury attributed to her husband. Mrs. Yuzari argues that although a claim for loss of consortium derives from the injured spouse's claim, it is also independent of it. Southern Auto, on the other hand, contends that, because a claim for loss of consortium represents a cause of action deriving from the injured spouse's claim, it should therefore be subject to a reduction reflecting the jury's finding of contributory negligence.

In *Hopson v. St. Mary's Hospital*, 176 Conn. 485, 408 A.2d 260 (1979), the Connecticut Supreme Court first recognized a claim for loss of consortium. The court explicitly noted that "a consortium action is *derivative* of the injured spouse's cause of action, [so that] the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or an adverse judgment on the merits" (emphasis added). *Id.* at 494, 408 A.2d 260 (citing *Millington v. Southeastern Elevator Co*, 22 N.Y.2d 498, 508, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968); *Diaz v. Eli Lilly & Co.*, 364 Mass. 153, 167, 302 N.E.2d 555 (1973)). In *Izzo v. Colonial Penn. Ins. Co.*, 203 Conn. 305, 312, 524 A.2d 641 (1987), the court held in part that a "per person" limit on liability contained in the plaintiff's insurance policy included claims for loss of consortium arising out of the injured spouse's harm because "[l]oss of consortium, although a separate cause of action, is not truly independent, but rather derivative and inextricably attached to the claim of the injured spouse." *See also, Reed v. Pacific Mountain Express Co.*, 597 F.Supp. 42, 44 (D.Conn.1984) (Zampano, J.) (consortium action is derivative of the injured spouse's cause of action); *Wesson v. Milford*, 5 Conn.App. 369, 375, 498 A.2d 505 (1985) (same); *Green v. Metals Selling Corp.*, 3 Conn.App. 40, 47, 484 A.2d 478 (1984) (same); *Hinde v. Butler*, 35 Conn.Supp. 292, 295, 408 A.2d 668 (1979) (same).

These cases make evident that the verdict in favor of Mrs. Yuzari must be reduced by the percentage of contributory negligence that the jury attributed to Mr. Yuzari. Southern Auto's motion is there-

fore GRANTED, and Mrs. Yuzari's verdict is accordingly reduced to $65,000.00.

### III. *Conclusion*

Southern Auto's motion for remittitur is GRANTED; the plaintiffs' motion for additur is DENIED; Southern Auto's motion for reduction of Mrs. Yuzari's award of damages for loss of consortium is GRANTED.

Finally, although Mrs. Hirshman's case was not presented to the jury for a determination of damages, it was not withdrawn. Therefore, Mrs. Hirshman's case is DISMISSED for lack of prosecution.

Judgment to enter accordingly.

SO ORDERED.