******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

McDONALD, J., concurring. With respect to the first certified question, I join part I of the majority opinion, which concludes that Connecticut public policy supports imposing a duty on a school to warn about or protect against the risk of a serious insect-borne disease when it organizes a trip abroad. I write separately with respect to the second certified question because, while I am compelled to agree with part II of the majority opinion that the trial court did not abuse its discretion in denying remittitur under the various standards we have long articulated, it is evident to me that our current remittitur jurisprudence is internally inconsistent and fails to provide clear guidance as to what constitutes an excessive verdict. Our muddled precedents are particularly problematic when noneconomic damages are challenged. Indeed, while the damages award in the present case shocks *my* conscience, our existing standard does not provide a recognized basis to conclude that the trial court's conclusion to the contrary was improper. Because the parties have not challenged the existing standards, I write in the hope that this issue will be remedied—either legislatively or by this court—at the earliest appropriate opportunity.

I

The confusion in our remittitur jurisprudence begins with our guidance to the trial courts that are charged with applying it. The majority, drawing on our recent remittitur decisions, presents as a purportedly unified standard what a close examination reveals to be in fact at least four distinct and potentially contradictory standards that govern a court's decision whether to grant or deny a motion for remittitur: "In determining whether to order remittitur, the trial court is required to review the evidence in the light most favorable to sustaining the verdict. . . . Upon completing that review, [1] the court should not interfere with the jury's determination except when the verdict is plainly excessive or exorbitant. . . . [2] The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury [was] influenced by partiality, prejudice, mistake or corruption. . . . The court's broad power to order a remittitur should be exercised [3] only when it is manifest that the jury [has] included items of damage which are contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions. . . . This court has upheld a remittitur order [4] only when we have laid before us a very clear and striking case of indubitable wrong, so clear and striking as to indicate

the influence of undue sympathy, prejudice or corruption on the verdict." (Citation omitted; internal quotation marks omitted.)

As we previously have acknowledged, certain aspects of these tests—whether the damages award is plainly excessive or exorbitant, and whether it shocks the court's sense of justice[1]—are highly subjective, providing "vague guidance at best" to courts charged with applying them.[2] *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 282, 32 A.3d 318 (2011). Other aspects of the standard, by contrast, aspire to objectivity, and suggest that an order of remittitur is appropriate *only* when the court can identify some sort of articulable legal error or when the damages awarded are without any evidentiary support.

It certainly is possible to reconcile these various expressions of the governing legal standard. It may be, for example, that the more objective standards flesh out the meaning of the more subjective ones, so that a trial court may find that an award is exorbitant or shocking only if the court also determines that the award arises from some identifiable jury bias or legal error. Or it may be that we have inadvertently agglomerated tests and standards that are in fact specific to distinct types of actions or damages. It would make sense, for instance, if an award of *economic* damages could be reduced (or increased, in the case of additur)[3] only when the award is unsupported by the record evidence or has been calculated on the basis of some legally improper methodology. Compensation for less quantifiable *noneconomic* damages such as physical pain and emotional suffering, by contrast, might be reviewable only by a more amorphous "shocks the conscience" standard. In our most recent attempt to sort out this state's common law of remittitur, however, we have provided little clarity, unhelpfully holding only that "a trial court ordering a remittitur must set forth in the memorandum of decision clear, definite and satisfactory reasons for so ordering." *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 283. Further guidance is necessary.

## II

Although it is arguably possible to reconcile the various standards to be applied by the trial court, the same cannot be said for the standards by which we purport to review a trial court's decision to grant or deny a remittitur. The majority paradoxically notes that "the proper standard of review of a trial court's decision to grant or deny a motion to set aside a verdict as *excessive as a matter of law* is that of an *abuse of discretion*." (Emphasis added; internal quotation marks omitted.) This is precisely what prior case law has dictated. Nonetheless, this oxymoronic statement of the law would seem to subject purely legal determinations, which ordinarily are reviewable de novo, to a deferential and fact-

specific abuse of discretion standard of review.

Since this peculiar iteration of the standard of review for remittitur decisions emerged in the early 1980s,[4] Connecticut's appellate courts have struggled to apply it in a consistent and intelligible manner. Although most of our cases indicate that the decision to grant a remittitur is a discretionary determination that is reviewable only for clear abuse of discretion, in some instances we have indicated or implied that we will review a remittitur determination de novo, as a pure question of law, or, possibly, under both an abuse of discretion and a de novo standard. See, e.g., *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 175, 176 n.10, 177, 530 A.2d 596 (1987) (stating that whether "amount of the verdict is 'exorbitant' and unjust in light of all of the evidence . . . raises a question of law," and concluding, contrary to trial court and solely on basis of size of award, that verdict was "so grossly excessive as to shock the conscience of this court"); *Peck* v. *Jacquemin*, 196 Conn. 53, 72, 491 A.2d 1043 (1985) ("[t]he trial court now makes its determination as a pure question of law"); see also *Wichers* v. *Hatch*, 252 Conn. 174, 181–82, 745 A.2d 789 (2000) (reviewing de novo trial court's additur order because court had concluded "as a matter of law" that it was required to increase award).

We also have provided conflicting accounts of precisely how a trial court exercises its discretion in determining that an award is excessive as a matter of law. Compare, e.g., *Mahon* v. *B.V. Unitron Mfg., Inc.*, 284 Conn. 645, 665, 935 A.2d 1004 (2007) (only after finding that award is excessive as matter of law may court, in exercise of its discretion, reduce jury award), with *Alfano* v. *Insurance Center of Torrington*, 203 Conn. 607, 614, 525 A.2d 1338 (1987) (if court determines that award is excessive it is required to order remittitur, but amount remitted rests within court's discretion) and *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 110, 952 A.2d 1 (2008) (decision rests entirely within court's discretion).

Finally, our cases display some confusion over whether (1) General Statutes § 52-216a; see footnote 4 of this concurring opinion; now governs the granting and review of all remittitur claims, or (2) whether the common-law standard continues to govern most such claims, with § 52-216a governing only those remittitur decisions arising under circumstances in which a jury is unaware of the existence of a potentially relevant settlement or release agreement between a party and a joint tortfeasor. Compare *Bovat* v. *Waterbury*, 258 Conn. 574, 599, 783 A.2d 1001 (2001) ("[t]he express language of § 52-216a suggests that the statute applies solely to actions in which there are, or could be, joint tortfeasors"), with *Saleh* v. *Ribeiro Trucking, LLC*, supra, 303 Conn. 281 (reviewing remittitur pursuant to § 52-216a despite absence of any joint tortfeasors,

release, or settlement agreement); see also *Wichers* v. *Hatch*, supra, 252 Conn. 186–87 (statute codifies common law of additur and remittitur).

## III

The lack of clear and consistent standards for the review of excessive jury awards, particularly with respect to noneconomic damages, is troubling on many levels. Neither the defendant, The Hotchkiss School, nor the insurers that underwrite the risks of schools similarly situated to the defendant that offer study abroad programs, possibly could have anticipated the magnitude of the verdict in the present case. The unfortunate consequences that may flow from the uncertainty created thereby include, among others, significantly increased premiums or policy exclusions for noneconomic damages, either of which might discourage schools and other organizations from offering such trips, which are broadly viewed as a beneficial educational and social experience.

The lack of clear and definite standards also is worrisome in light of the legal scholarship suggesting that civil damages awards may be tainted by socioeconomic and racial disparities. See, e.g., A. Chin & M. Peterson, "Deep Pockets, Empty Pockets: Who Wins in Cook County Jury Trials," Institute for Civil Justice (Rand Corp. 1985) pp. v, viii, 29, 38–40 (reviewing 9000 civil jury verdicts in Illinois and concluding that race had "a pervasive influence on the outcomes," with black plaintiffs receiving substantially smaller awards than white plaintiffs for comparable injuries); see also *Martin* v. *Charleston Area Medical Center*, 181 W. Va. 308, 312, 382 S.E.2d 502 (1989) ("it is well documented that some jury awards are affected by the race of the plaintiff"). I am not aware of any empirical evidence that such disparities are present in Connecticut's civil justice system. Nor do I have any objective basis to conclude that the virtually unprecedented award in the present case would have been lower if the plaintiff Cara L. Munn[5] had been a member of a family of more modest means or of a historically disadvantaged minority group. Nevertheless, I could more readily comprehend the monumental verdict in this case if we had more objective standards by which to judge the excessiveness of a noneconomic damages award, standards that leave less space for biases, whether explicit or implicit, to manifest.

## IV

Ultimately, if I were to review the damages award in the present case de novo, I likely would find that the award of $31.5 million in noneconomic damages so shocks my sense of justice as to compel the conclusion that the jury must have been motivated by sympathy for the plaintiff. I do not mean in any way to minimize the tragic and life altering injuries that the plaintiff has

sustained. There is clear evidence of profound loneliness. She suffers the debilitating effects that often result when one has a visible disability. The prime of her youth is lost to her, and many of her childhood dreams are unattainable, or at least appear to be at this point in time.

At the same time, I cannot ignore the fact that juries frequently award noneconomic damages that are orders of magnitude lower to plaintiffs whose injuries are, by any objective standard, at least as grievous: individuals who spend each day of their lives in excruciating pain, or whose injuries leave them incapable of even the most basic forms of self-care and human interaction. Although much has been taken from the plaintiff, much abides. On the basis of testimony to the jury at trial, the plaintiff can still undertake travel, pursue her studies, engage in exercise, seek work, and play some sports. Although the plaintiff's suffering is substantial, the jury in the present case was not presented with any structured basis, or expert testimony, or quantitative evidence of any sort that would have led them to the $31.5 million figure or that reveals any nexus whatsoever between the plaintiff's noneconomic injuries and this virtually unprecedented award. See *Munn* v. *Hotchkiss School*, 795 F.3d 324, 336 (2d Cir. 2015).

I return to where I began. Notwithstanding the untenable legal foundation on which we review these things, on the basis of our (internally inconsistent) precedents as they presently stand, I am compelled to conclude that the trial court did not abuse its discretion in denying remittitur in this case. The parties have not asked us to clarify our remittitur jurisprudence at this time, nor have they asked us to reconsider our oft-stated position that the denial of a motion for remittitur is, in most instances, reviewable only for abuse of discretion. Accordingly, because I perceive nothing in the record that would compel the conclusion that the United States District Court for the District of Connecticut abused its discretion in denying the defendant's motion, I agree with the majority that the answer to the second certified question is "no." If the legislature is not inclined to provide further guidance, however, then I trust that we will address these issues in due course.

[1] We have indicated that the terms " 'shocks the sense of justice' " and " 'shocks the conscience' " may be used interchangeably in this context. *Saleh* v. *Ribeiro Trucking, LLC*, 303 Conn. 276, 279 n.6, 32 A.3d 318 (2011).

[2] If the virtually unprecedented $31.5 million noneconomic damages award in the present case is not so shocking as to require remittitur, for example, one wonders on what basis a reviewing court could conclude that an award of $100 million, or $500 million, is too much. At oral argument, the counsel for the plaintiff Cara L. Munn volunteered that he would not trade places with her even for $1 billion. If that is the only check on the magnitude of unquantifiable noneconomic damages, then I fear that such awards are, effectively, unreviewable.

[3] A further question that may need to be addressed in the future is whether the same standards govern a trial court's decision to increase and to decrease a jury verdict. Although many of the considerations are no doubt the same, our state constitution may place greater restrictions on additur (which awards to a plaintiff damages not authorized by the jury) than on remittitur

(which merely reduces some portion of the authorized damages). See generally *Dimick* v. *Schiedt*, 293 U.S. 474, 486–87, 55 S. Ct. 296, 79 L. Ed. 603 (1935) (applying federal constitution).

[4] The language at issue traces its origins to a 1982 public act. Prior to 1982, the authority of the trial court to order a remittitur derived both from the court's inherent common-law authority to supervise the trial process; *Buckman* v. *People Express, Inc.*, 205 Conn. 166, 174, 530 A.2d 596 (1987); *Baldwin* v. *Porter*, 12 Conn. 473, 485 (1838); and from General Statutes § 52-228 and the associated rules of practice, Practice Book §§ 16-35 and 17-3. During that period, our cases generally recognized that (1) the trial court has "broad legal discretion" to grant or deny a motion for remittitur, (2) such discretion, however, is not unfettered, (3) appellate tribunals review a trial court's ruling on a motion for remittitur for a "clear abuse of . . . discretion," and (4) "[t]he proper test to be applied is to determine whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) *Lee* v. *Lee*, 171 Conn. 1, 3, 368 A.2d 11 (1976).

In 1982, the legislature amended General Statutes (Rev. to 1981) § 52-216a, which barred a civil jury from being informed of the existence of a settlement or release agreement involving a joint tortfeasor but vested the trial court with discretion to reduce the verdict by the amount of the settlement/agreement, in response to a decision by this court concluding that the trial court's unfettered discretion to reduce the verdict impermissibly intruded on the constitutional role of the jury. See *Seals* v. *Hickey*, 186 Conn. 337, 350–53, 441 A.2d 604 (1982); see also *Peck* v. *Jacquemin*, 196 Conn. 53, 69, 491 A.2d 1043 (1985). Number 82-406, § 3, of the 1982 Public Acts eliminated the discretionary language and replaced it with language permitting remittitur or additur if the verdict is "excessive as a matter of law" or "inadequate as a matter of law," respectively. The expansive language and limited legislative history of the amendment raised the question of whether the legislature intended not only to address the concerns identified in *Seals* with respect to joint tortfeasor situations but to limit more generally the discretion of the trial courts to order remittiturs. The substantive legislative history of the amendment is limited to a brief statement by its cosponsor, Representative Alfred J. Onorato:

"What this amendment would do or attempt to do is to make Connecticut law consistent with the law in other states, and on a federal level in the determination of jury verdicts.

"Right now in Connecticut, whether a verdict is set aside by the court or whether remittitur is added, or whether there's an additur is in the discretion of the court.

"What this amendment would do would be to put those same safeguards on it that are in other states and are in the federal court system, that the only time a remittitur or an additur would be practical is when the court rules *as a matter of law* that the verdict is either excessive or inadequate. That's what this amendment would do. It would take the discretion out, and [the court] would have to find *as a matter of law* that the verdict was out of balance one way or the other." (Emphasis added.) 25 H.R. Proc., Pt. 19, 1982 Sess., pp. 6177–78.

Although the legislative history suggested an intent to bring Connecticut's law of remittitur into conformity with that of the federal courts and other states, my research indicates that many jurisdictions afforded their trial courts broad discretion in these matters at that time, and also that there was no single prevailing standard governing remittitur outside of Connecticut. See generally S. Cravens, "The Brief Demise of Remittitur: The Role of Judges in Shaping Remedies Law," 42 Loy. L.A. L. Rev. 247, 250 (2008) ("There is not tremendous consistency in the versions of remittitur employed in various state court systems across the country. . . . While wording of the standards may vary, the decision whether to grant a remittitur is generally committed to the sound discretion of the trial court."); I. Sann, "Remittiturs (and Additurs) in the Federal Courts: An Evaluation with Suggested Alternatives," 38 Case W. Res. L. Rev. 157 (1987) (canvassing federal jurisprudence); see also I. Sann, supra, 183 ("[t]he line drawn by courts in such cases has varied from court to court and from case to case"); I. Sann, supra, 187 ("[s]ome judges . . . seem to grant remittiturs in any case in which the judge disagrees with the verdict"). Accordingly, it is difficult to determine whether, in continuing to treat most remittitur decisions as discretionary

matters, we have disregarded the will of the legislature as expressed explicitly in General Statutes § 52-216a.

[5] Munn's parents, Orson D. Munn III and Christine Munn, were also named as plaintiffs in this matter. For simplicity, all references herein to the plaintiff are to Cara L. Munn.

_____